UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:09-mj-0010 CMK |
| Plaintiff, | ) | |
| vs. | ) | PROPOSED JUDGMENT |
| WILLIAM J. PEPPER, | ) | |
| Defendant. | ) | |
| | ) | |

This case came on regularly for trial on May 19, 2009, and June 10, 2009, at the United States District Court in Redding, California, the Honorable Craig M. Kellison, United States Magistrate Judge, presiding; the United States Forest Service appeared by and through Rule 180 Prosecutor, Special Law Enforcement Officer, Michael Zunino, and the defendant, William J. Pepper, appeared, in propria persona.

The defendant is charged with violating 36 C.F.R. 261.11(d) for "[f]ailing to dispose of . . . sewage, waste water or material . . . either by removal from the site or area, or by depositing it into receptacles or at places provided for such purposes."

The citation stems from the following facts. In early July 2008, Forest Service Officer Chris Holland [Holland] came upon a camp trailer occupied by defendant, William J. Pepper [Pepper] and Eileen DuBreuil [DuBreuil] within the boundaries of the Plumas National Forest. Holland observed

that the occupants of the camp trailer were allowing raw sewage[1] to be discharged into a hole that had been dug adjacent thereto. When confronted by Holland, Pepper indicated that the waste water discharge "was no big deal." Holland expressed his concerns with the defendant regarding the waste water discharge and upon leaving advised him that he needed to vacate the campsite.

On September 27, 2009, Holland returned to the campsite only to find that defendant and DuBreuil were still present. Holland also observed that although it appeared that a waste water disposal device had recently been obtained, it was not connected to the camp trailer discharge hose and was not being utilized. In rhetorically questioning Holland's concern with the manner of waste water discharge, the defendant informed Holland that "can't shit or piss in my home? I can do anything I want to. " Thereafter, the defendant dropped his pants in front of Holland and urinated.

At trial, the defendant did not dispute Holland's assessment of the method and manner of waste water discharge from his camp trailer. Instead his defense appeared to center on the fact that his occupancy on National Forest System lands was in conjunction to his mining activities on nearby unpatented mining claims.[2]

This defendant's arguments in support of this "mining" defense" can be summarized as follows:

(1) That the 36 C.F.R. § 261 [Forest Service] regulations do not apply to the defendant's mining activities;

(2) That the defendant's status as a miner entitled him to notice by Forest Service officials

///

///

---

[1] The defendant was camping in a 5th wheel trailer which traditionally is equipped with both gray water and blackwater storage tanks. A hose leading from these tanks emptied into a hand dug hole which was covered by a piece of plywood. Holland testified that upon removing the plywood he observed a black liquid substance which smelled of fecal matter and chemicals. The court makes no distinction between gray water or blackwater since what Holland appeared to observe would be encompassed within the definition of "sewage" and "waste water" as used in 36 C.F.R. 261.11(d). As such, the court's use of the term "waste water" herein is meant to describe the substance that Holland observed during his two contacts with the Defendant.

[2] The defendant and Dubreuil are the owners of several unpatented mining claims within the Plumas National Forest. The Defendant's campsite is located at least a mile from the nearest claim requiring travel over challenging terrain and a minimum one hour of travel time each way.

of the alleged violation and an opportunity to correct pursuant to 36 C.F.R. § 228.7.[3] <u>United States v. Hall</u>, 751 F. Supp. 1380, 1382 (E. D. Cal 1990); and

(3) That the method and manner of the defendant's waste water disposal was in accordance with "applicable Federal and State" standards. 36 C.F.R. § 228.8 [4]

Absent a finding that the defendant's presence on National Forest System lands was in furtherance of his mining activities, it is clear to the court that the defendant's discharge of waste water in the manner observed would satisfy the elements of 36 C.F.R. § 261.11(d) which prohibits failing to disposal of sewage and waste water from the site or area, or by depositing it into receptacles or at places provided for such purposes.  Whether the defendant's status as a "miner" exempts or removes him from 36 C.F.R. § 261[5] liability requires a brief review of the authority of

---

[3] 36 CFR § 228.7 Inspection, noncompliance.

(a) Forest Officers shall periodically inspect operations to determine if the operator is complying with the regulations in this part and an approved plan of operations.

(b) If an operator fails to comply with the regulations or his approved plan of operations and the noncompliance is unnecessarily or unreasonably causing injury, loss or damage to surface resources the authorized officer shall serve a notice of noncompliance upon the operator or his agent in person or by certified mail. Such notice shall describe the noncompliance and shall specify the action to comply and the time within which such action is to be completed, generally not to exceed thirty (30) days: Provided, however, that days during which the area of operations is inaccessible shall not be included when computing the number of days allowed for compliance.


[4] 36 C.F.R. § 228.8

All [mining] operations shall be conducted so as, where feasible, to minimize adverse environmental impacts on National Forest surface resources, including the following requirements:
. . .

(b) Water Quality. *Operator shall comply with applicable Federal and State water quality standards*, including regulations issued pursuant to the Federal Water Pollution Control Act, as amended (33 U.S.C. 1151 et seq.).

(c) Solid Wastes. Operator shall comply with applicable Federal and State standards for the disposal and treatment of solid wastes. <u>*All garbage, refuse, or waste, shall either be removed from National Forest lands or disposed of or treated so as to minimize, so far as is practicable, its impact on the environment and the forest surface resources*</u> . . .
. . . .

[5] 36 C.F.R. § 261.1 Scope.

(a) The prohibitions in this part apply, except as otherwise provided, when:
(1) An act or omission occurs in the National Forest System or on a National Forest System road or trail.
(2) An act or omission affects, threatens, or endangers property of the United States administered by the Forest Service.
(3) An act or omission affects, threatens, or endangers a person using, or engaged in the protection, improvement or administration of the National Forest System or a National Forest System road or trail.
(4) An act or omission occurs within the designated boundaries of a component of the National Wild and Scenic Rivers System.

the Forest Service with respect to mining operations on National Forest System lands.

Mining operations are defined in part by 30 U.S.C. § 612, and more specifically in 36 C.F.R. § 228.3. The regulation defines "operations" as follows:

> "All functions, work, and activities in connection with prospecting, exploration, development, mining or processing of mineral resources and all uses *reasonably incident* thereto, including roads and other means of access on lands subject to the regulations in this part, regardless of whether said operations take place on or off mining claims."

The Forest Service may properly regulate the surface use of forest lands. While the regulation of mining per se is not within Forest Service jurisdiction, where mining activity disturbs National Forest System lands, Forest Service regulation is proper. United States v. Weiss, 642 F.2d 296, 298 (9th Cir.1981) (Secretary of Agriculture has "power to adopt reasonable rules and regulations regarding mining operations within the national forests"); United States v. Richardson, 599 F.2d 290 (9th Cir.1979), cert. denied, 444 U.S. 1014[, 100 S.Ct. 663, 62 L.Ed.2d 643] (1980) (recognizing the conflict between mining and forest land policies and holding that the district court may properly enjoin unreasonable destruction of surface resources).   United States v. Goldfield Deep Mines Co., 644 F.2d 1307, 1309 (9th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982); United States v. Doremus, 888 F.2d 630, 632 (9th Cir.1989), cert. denied, 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 772 (1991). In reaffirming the Forest Service's authority to regulate mining, the court in United States v. Doremus, supra at 632, rejected a miner's contention that conduct "reasonably incident[al]" to mining could not be so regulated, and left no doubt that the Department of Agriculture possesses statutory authority to regulate activities related to mining in order to preserve the national forests. 16 U.S.C. § 551.

In recent years, the scope and manner of the authority of the Forest Service to regulate mining activity is dependant upon the nature and extent of the mining activity involved.

---

(b) Nothing in this part shall preclude activities as authorized by the Wilderness Act of 1964 or the U.S. Mining Laws Act of 1872 as amended.
(c) Unless an offense set out in this part specifies that intent is required, intent is not an element of any offense under this part.
(d) None of these prohibitions apply to any person engaged in fire suppression actions.

The Forest Service regulations governing the surface use of National Forest System lands in connection with operations on mining claims provide that, with certain exceptions, "a notice of intent to operate is required from any person proposing to conduct operations which might cause disturbance of surface resources." 36 C.F.R. § 228.4(a).[6]

---

[6] 36 C.F.R. § 228.4 Plan of operations--notice of intent--requirements.

(a) Except as provided in paragraph (a)(1) of this section, a notice of intent to operate is required from any person proposing to conduct operations which might cause significant disturbance of surface resources. Such notice of intent to operate shall be submitted to the District Ranger having jurisdiction over the area in which the operations will be conducted. Each notice of intent to operate shall provide information sufficient to identify the area involved, the nature of the proposed operations, the route of access to the area of operations, and the method of transport.

(1) A notice of intent to operate is not required for:
(i) Operations which will be limited to the use of vehicles on existing public roads or roads used and maintained for National Forest System purposes;
*(ii) Prospecting and sampling which will not cause significant surface resource disturbance and will not involve removal of more than a reasonable amount of mineral deposit for analysis and study which generally might include searching for and occasionally removing small mineral samples or specimens, gold panning, metal detecting, non-motorized hand sluicing, using battery operated dry washers, and collecting of mineral specimens using hand tools;*
(iii) Marking and monumenting a mining claim;
(iv) Underground operations which will not cause significant surface resource disturbance;
*(v) Operations, which in their totality, will not cause surface resource disturbance which is substantially different than that caused by other users of the National Forest System who are not required to obtain a Forest Service special use authorization, contract, or other written authorization;*
*(vi) Operations which will not involve the use of mechanized earthmoving equipment, such as bulldozers or backhoes, or the cutting of trees, unless those operations otherwise might cause a significant disturbance of surface resources; or*
(vii) Operations for which a proposed plan of operations is submitted for approval;

(2) The District Ranger will, within 15 days of receipt of a notice of intent to operate, notify the operator if approval of a plan of operations is required before the operations may begin.

3) An operator shall submit a proposed plan of operations to the District Ranger having jurisdiction over the area in which operations will be conducted in lieu of a notice of intent to operate if the proposed operations will likely cause a significant disturbance of surface resources. An operator also shall submit a proposed plan of operations, or a proposed supplemental plan of operations consistent with § 228.4(d), to the District Ranger having jurisdiction over the area in which operations are being conducted if those operations are causing a significant disturbance of surface resources but are not covered by a current approved plan of operations. The requirement to submit a plan of operations shall not apply to the operations listed in paragraphs (a)(1)(i) through (v). The requirement to submit a plan of operations also shall not apply to operations which will not involve the use of mechanized earthmoving equipment, such as bulldozers or backhoes, or the cutting of trees, unless those operations otherwise will likely cause a significant disturbance of surface resources.

(4) If the District Ranger determines that any operation is causing or will likely cause significant disturbance of surface resources, the District Ranger shall notify the operator that the operator must submit a proposed plan of operations for approval and that the operations can not be conducted until a plan of operations is approved.

(b) Any person conducting operations on the effective date of these regulations, who would have been required to submit a plan of operations under § 228.4(a), may continue operations but shall within 120 days thereafter submit a plan of operations to the District Ranger having jurisdiction over the area within which operations are being conducted: Provided, however, That upon a showing of good cause the authorized officer will grant an extension of time for submission of a plan of operations, not to exceed an additional 6 months. Operations may continue according to the submitted plan during its review, unless the authorized officer determines that ( the operations are unnecessarily or unreasonably causing irreparable damage to surface resources and advises the operator of those measures needed to avoid such damage. Upon approval of a plan of operations, operations shall be

If the District Ranger determines that the proposed operations are likely to cause a "significant disturbance of surface resources," the operator must file a proposed plan of operations [PO]. FN4  Conversely, 36 C.F.R. § 228.4 provides that a "notice of intent to operate" [NI] is not required for "[p]rospecting and sampling which will not cause significant surface resource disturbance" or mineral deposit removal. 36 C.F.R. § 228.4(a)(1)(ii).  "Prospecting and sampling" as contemplated in § 228.4(a)(1)(ii) can "include searching for and occasionally removing small mineral samples or specimens, [or] gold panning."

Of course, whether the proposed mining activity is likely to cause disturbance of surface resources is the source of continued debate and tension.  The court in United States v. Lex, 300 F. Supp.2d  951, 961-63 (E. D. Cal. 2003) made clear that a miner is not subject to the requirements of § 228.4 if his operations are minimal and not likely to cause disturbance of surface resources. [7]

///
///
///
///

---

conducted in accordance with the approved plan. The requirement to submit a plan of operations shall not apply: (1) To operations excepted in § 228.4(a) or (2) to operations concluded prior to the effective date of the regulations in this part.

*(c) The plan of operations shall include:*
*(1) The name and legal mailing address of the operators (and claimants if they are not the operators) and their lessees, assigns, or designees.*
*(2) A map or sketch showing information sufficient to locate the proposed area of operations on the ground, existing and/or proposed roads or access routes to be used in connection with the operations as set forth in § 228.12 and the approximate location and size of areas where surface resources will be disturbed.*
*(3) Information sufficient to describe or identify the type of operations proposed and how they would be conducted, the type and standard of existing and proposed roads or access routes, the means of transportation used or to be used as set forth in § 228.12, the period during which the proposed activity will take place, and measures to be taken to meet the requirements for environmental protection in § 228.8.*

. . . .

[7]  The decision in United States v. Lex, prompted the Forest Service to implement a rule (70 FR 32713-01), adopted July 6, 2005, which was meant to clarify § 228.4 by requiring mining operators to file a NI "when the proposed operation might cause a disturbance to surface resources." How this clarification will play out is questionable.  By omitting the term "significant,"  the new rule would appear to only confuse or invite litigation.  Secondarily, it solves nothing in preventing the occupancy issues or concerns attendant to sham operations. Any would-be miner may still come and go on National Forest Systems lands without Forest Service scrutiny so long as he subjectively determines that his mining operations are minimal under § 228.4(a)(1).

DISCUSSION

1. Applicability of § 261 Prohibitions.

The defendant maintains that the § 261 prohibitions are for general forest users and inapplicable to miners, such as himself. This argument is predicated upon the United States Mining Laws Act of 1872 which reserves to the claimant "the exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26 (1982). This right was limited by the Surface Resources and Multiple Use Act of 1955, which reserved to the United States the right to manage and dispose of surface resources on unpatented mining claims. 30 U.S.C. § 612.

The court in United States v. Doremus, supra, rejected the same argument offered by the defendant, noting that the § 261 prohibitions could be enforced against miners so long as the mining operations were not "unreasonably circumscribed as to amount to a prohibition." See also, United States v. Weiss, supra at 299. Similarly, the court in Doremus also found that the § 261 regulations did not conflict with 30 U.S.C. § 612 because the regulatory right of the Forest Service did not "endanger or materially interfere with mining operations."

Here, the defendant is charged with allowing waste water to be discharged from his camp trailer at a location well removed from his mining operations. Prohibiting this type of conduct does not interfere in any way with defendant's mining operations. The court finds no reason to distinguish between the rights of miners and general users of the forest with respect to issues involving resource "waste and destruction." issues. United States v. Doremus, supra at 636.

2. Notice and Opportunity to Correct.

The Defendant next contends that he is not subject to § 261 penalties since he was entitled to advance written notice and the opportunity to correct pursuant to 36 C.F.R. § 228.7.[8]

---

[8] 36 C.F.R. § 228.7.

(a) Forest Officers shall periodically inspect operations to determine if the operator is complying with the regulations in this part and an approved plan of operations.

(b) If an operator fails to comply with the regulations or his approved plan of operations and the noncompliance is unnecessarily or unreasonably causing injury, loss or damage to surface resources the authorized officer shall serve a notice of noncompliance upon the operator or his agent in person or by certified mail. Such notice shall describe the noncompliance and shall specify the action to comply and the time within which such action is to be completed, generally not to exceed thirty (30) days: Provided, however, That days during which the area of operations is inaccessible shall not be included when computing the number of days

Proclaiming his status as a miner, and that his occupancy on National Forest System lands was in conjunction to his mining activities, the defendant maintains that he was entitled to written notice [Notice to Correct] of the waste water discharge concerns and an opportunity to take corrective measures under § 228.7(b).  See, United States v. Hall, 751 F. Supp. 1380 (E. D. Cal. 1990).

This arguments fails for several reasons.  As stated above, the court in Doremus found that Forest Service was free to pursue § 261 sanctions against a miner for an activity "reasonably incident" to the defendant's mining operations if the activity caused resource damage.  In the present case, the court is hard pressed to find that the discharge of waste water from a camp trailer located a considerable distance from the defendant's mining claims as being "reasonably incident" to his mining operations.[9]  Thus, if pursuing prosecution under § 261 against miners for resource damage issues that are associated to activities that are "reasonably incident" to the mining operation is allowed under Doremus, certainly the prosecution of resource damage activities unrelated or not collateral to mining operations must be permissible.  That is this case.

The argument also fails because it presumes that the Forest Service should have known or been aware of defendant's mining activities.  The defendant's presence on National Forest System lands offered nothing to suggest that he was doing anything other than camping.  There is no evidence that the defendant ever submitted or filed a NI or PO pursuant to 36 C.F.R. 228.4.  Although the court agrees that there existed no evidence that the limited scope of defendant's mining operations necessitated the submission or filing of a NI or PO, it finds the defendant's assertion that the Forest Service should have realized that his occupancy was related to legitimate mining

---

allowed for compliance.

[9] In the present case, the defendant and his companion "dry camped" at a location far removed from his alleged mining activity.  The site is undeveloped and requires the defendant to bring his own water and other necessities.  There is no waste water disposal site.  The decision to discharge his waste water untreated adjacent to his camp trailer as opposed to periodically traveling to a dump station is one of defendant's choice.  Neither alternative affects his mining activities.  Since the defendant must periodically travel to locations for water, food and supplies, his decision to not take his camp trailer to dump waste water at the same time must be based solely on convenience and cost savings.

operations somewhat disingenuous.[10]

Because miners who do not plan on disturbing surface resources are not required to file a NI or PO, it also not surprising that the Forest Service is generally not informed of the miner's decision to not file or submit a NI or PO. See, United States v. Lex, supra at 961-62.

The unintended consequence of the court's ruling in Lex, allows legitimate miners having minimal operations to avoid Forest Service scrutiny, but also allows other users claiming to be miners the ability to occupy National Forest System lands for extended periods of time on the pretense of mining. The Forest Service has legitimate concerns over "sham" claims and long term occupancies on the National Forest System lands under the ruse of mining operations. United States v. Shumway, 199 F.3d 1093, 1108 (9th Cir. 1999). The court does not suggest that the defendant is in the latter category, but the fact should not be ignored that the defendant chose not to inform the Forest Service formally or informally of his mining activities or occupation of National Forest System lands, or of his intended method of waste water disposal. Nor did he file a NI or submit a PO, albeit the defendant's right under Lex not to do so. In contrast to the defendant's "don't bother me, I'm a miner" attitude (as evidenced through his contacts with Holland) is his claimed entitlement to a Notice to Correct under § 228.7. In reading § 228.7(a), it is clear to the court that the duty of the Forest Service to provide a Notice to Correct would apply only to mining activity it is aware of by personal knowledge, or constructively through the NI and PO process, not by some form of osmosis as the defendant would appear to suggest.

Under these circumstances, the court finds that the Forest Service was not required to provide defendant a "Notice to Correct" under § 228.7 since it had no reason to believe that defendant's occupation of National Forest System lands was in anyway related to mining operations.

3. Waste Water Discharge Satisfying State or Federal Standards.

The defendant maintains that as a miner, the appropriateness of his waste water discharge

---

[10] It should also be noted that the discharge of waste water on National Forest System lands during long term occupancies could be construed as a "surface disturbance" requiring the filing of an NI or submission of PO. See, United States v. Langley, 587 F. Supp 1258 (D.C. Cal. 1984). If the defendant had filed a NI or submitted a PO, the waste water issues could have been addressed informally or in a PO, and the argument that he should have received a "Notice to Correct" under § 228.7 would be better received. United States v. Hall, supra.

1  upon Forest Service lands is governed by the environmental requirements set forth in 36 C.F.R.
2  228.8.
3        This argument fails again because the discharge of waste water while camping cannot be
4  construed as "reasonably incident" to defendant's mining operations.  The environmental
5  requirements set forth in § 228.8 apply only to mining "operations," (a term of art) defined in §
6  228.3 as "[a]ll functions, work, and activities in connection with prospecting, exploration,
7  development, mining or processing of mineral resources and all uses reasonably incident thereto .
8  . . regardless of whether said operations take place on or off mining claims."  The court does not
9  read this language so broadly to include defendant's camping activities.
10        Even if the issue of waste water discharge could arguably be considered as being within the
11  purview of mining "operations," the court does not find that defendant's method of discharge
12  complied with existing State or Federal law.  The statutory language in 36 C.F.R. § 228.8 requires
13  that all mining "operations be conducted so as, where feasible, to minimize adverse environmental
14  impacts on National Forest surface resources . . . [by] complying with applicable Federal and State
15  water quality standards, including regulations issued pursuant to the Federal Water Pollution Control
16  Act."  § 228.8(c) requires that mining operators remove all waste "from National Forest lands or
17  disposed of or treated so as to minimize, so far as is practicable, its impact on the environment and
18  the forest surface resources."
19        Clearly, the defendant's choice to not remove the waste water from National Forest System
20  lands did not comply with the "solid waste" removal provisions of § 228.8(c), if the court would
21  construe this to be the applicable standard.  He voluntarily chose to discharge waste water into a
22  hand dug pit adjacent to his camp trailer, a decision not based on environmental concerns, but one
23  of convenience and economics.  Alternatively, he could have periodically taken his camp trailer to
24  an off site waste water disposal site or used the waste water storage container that he had apparently
25  acquired following his initial contact with Holland.  The court finds that the defendant made no
26  effort to eliminate or minimize the environmental concerns associated with the discharge of raw
27  sewage other than merely covering the waste water with a piece of plywood.
28        Although the defendant submitted numerous and unrelated sections of various manuals,

rules and regulations to the court as confirmation that his method of waste water discharge was acceptable under certain circumstances at undeveloped sites, the court found none of this material to be helpful, and certainly nothing provided added support to the method of waste water discharge utilized by the defendant. Even when primitive methods of waste water disposal are allowed or tolerated on National Forest System lands, they are treated as the least preferable alternatives. The court does not consider defendant's method of waste water discharge a satisfactory alternative under any State or Federal standard, especially when his camp trailer was equipped with waste water storage tanks which could have been easily moved to off site locations for disposal.

## CONCLUSION

The court finds that the defendant is guilty of violating 36 C.F.R. § 261.11(d), for "failing to dispose of . . . sewage, waste water or material . . . either by removal from the site or area, or by depositing it into receptacles or at places provided for such purposes." The defendant's argument fails that his "mining card" trumps the ability of the Forest Service to enforce resource violations under the § 261 regulations. United States v. Doremus, supra at 636-37. Nor does his argument that the discharge of waste water on National Forest System lands while camping can be construed as an act "reasonable incident" to his claimed mining operations. United States v. Shumway, supra at 1101. 30 U.S.C. 612(b).

Accordingly,

This Court intends to impose the following judgment against defendant as to Violation Notice F3879757: a fine in the sum of $175.00, plus a $10.00 special assessment pursuant to 18 U.S.C. § 3013, for a total fine of $185.00, all due and payable upon entry of judgment.

Pursuant to Rule 58(c)(3) of the F.R.Crim.P., you may appear on September 24, 2009, at 9:00 a.m. to be heard in mitigation of the proposed sentence to be imposed by this Court. In the event that you desire to waive said right to be heard, or by choosing not to appear on the date and time given, the conditions of this proposed judgment, as set forth above shall be adopted and become the judgment of the Court.

///

Pursuant to Rule 58(g)(2)(13) and Rule 32(j) of the Federal Rules of Criminal Procedure, you have the right to appeal the judgment of conviction and/or sentence to the United States District Court within ten (10) days of the entry of this Judgment. You must file your Notice of Appeal with the Clerk of the United States District Court, Eastern District of California, 501 "I" Street, Sacramento, California 95814. You are further advised that if you are unable to pay the costs of appeal, you may seek permission to appeal in forma pauperis.

Dated:   July 28, 2009

                                                          **CRAIG M. KELLISON**
                                                         UNITED STATES MAGISTRATE JUDGE